Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLA@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J Sports Productions, Inc.,<br><br>Plaintiff,<br><br>vs.<br><br>Felipe Cruz Manzano, et al.,<br><br>Defendant. | Case No. CV 08-1872 RMW-PVT<br><br>NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT<br><br>For: Honorable Ronald M. Whyte<br><br>Date: Friday, August 15, 2008<br><br>Time:  9:00 AM |

TO THE HONORABLE RONALD M. WHYTE, THE DEFENDANT AND

HIS ATTORNEYS OF RECORD:

   PLEASE TAKE NOTICE THAT on August 15, 2008, at 9:00 AM or as soon thereafter as

this matter may be heard by the above entitled United States District Court, located at 280 South

First Street, San Jose, CA 95113, Plaintiff will present its Application for Default Judgment against

Defendant Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote

Mexican Grill.

   The Clerk has previously entered the default of said Defendant on or about June 5, 2008.

At the time and place of hearing, Plaintiff will present proof of the following matters:

NOTICE OF APPLICATION AND APPLICATION
FOR DEFAULT JUDGMENT BY THE COURT
CASE NO. CV 08-1872 RMW-PVT
PAGE 1

1.    Defendant is not an infant or incompetent person, or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940; and,

2.    Defendant has not appeared in this action; and,

3.    Notice of this Application for Default Judgment by Court and supplemental pleadings were served on said Defendant; and,

4.    Plaintiff is entitled to judgment against the Defendant on the claims pled in the complaint. To wit:

A.    By contract, Plaintiff paid for the proprietary rights to distribute the *Marco Antonio Barrera III v. Mzonke Fana World Super Featherweight Championship Fight Program* broadcast of April 9, 2005, via closed-circuit television (hereinafter referred to as the "Program").

B.    With full knowledge that the Program was not to be intercepted, received, and/or exhibited by entities unauthorized to do so, the above named Defendant, and/or his agents, servants, workmen, and/or employees, did unlawfully intercept, receive and thereafter exhibit the Program at the time of the transmission at the address of the establishment, "El Coyote Mexican Grill", a food and drink operated by Defendant, and located at 4278 Senter Road , San Jose, California 95111.  Please see the concurrently filed Declaration of Affiant.

C.    Said unauthorized reception, interception and/or exhibition of the Program by said Defendant was done willfully and for the purpose of direct or indirect commercial advantage or private financial gain.

D.    The unauthorized publication or use of communications, such as the transmission for which Plaintiff had the distribution rights, is prohibited by Title 47 U.S.C., Section 605, *et seq.*

E.    The unauthorized reception, interception and exhibition of the Program at the address of the Defendant's establishment as described herein, is also prohibited by Title 47 U.S.C. sec. 553, *et seq.*

F.     By said acts of receiving, intercepting and exhibiting the Program at the above-indicated address, Defendant tortuously obtained possession of the Program and wrongly converted same to his own use and benefit.

5.     Plaintiff seeks Judgment in its favor and against the Defendant, in the amount of $100,800.00.  A breakdown of the relief requested under each of the three (3) counts of the Plaintiff's complaint is detailed within the Proposed Order concurrently filed.

6.     By and through this Application, Plaintiff also seeks recovery of its attorneys' fees and relevant costs incurred as provided for pursuant to 47 U.S.C. Section 553, *et seq.* and 47 U.S.C. Section 605, *et seq.*

Respectfully submitted,


Dated:  July 1, 2008                    /s/ Thomas P. Riley
                                        **LAW OFFICES OF THOMAS P. RILEY, P.C**.
                                        BY: Thomas P. Riley
                                        Attorneys for Plaintiff
                                        J & J Sports Productions, Inc.

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Squire, 1114 Fremont Avenue, South Pasadena, California 91030-3227.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 1, 2008, I served:

**NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano (Defendant)
2766 Plumas Drive, #229
San Jose, CA 95121

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2008, at South Pasadena, California.

Dated:  July 1, 2008                    */s/ Terry Houston*
                                        **TERRY HOUSTON**

1  Thomas P. Riley, SBN 194706
   **LAW OFFICES OF THOMAS P. RILEY, P.C.**
2  First Library Square
   1114 Fremont Avenue
3  South Pasadena, CA 91030-3227

4  Tel: 626-799-9797
   Fax: 626-799-9795
5  TPRLAW@att.net

6  Attorneys for Plaintiff
   J & J Sports Productions, Inc.

7

8                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
9

10  J & J Sports Productions, Inc.,        |    CASE NO. CV 08-1872 RMW-PVT

11              Plaintiff,                  |    MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT OF
12          vs.                                 PLAINTIFF'S APPLICATION FOR
                                                DEFAULT JUDGMENT BY THE
13                                              COURT
    Felipe Cruz Manzano, et al.
14

15              Defendant.

16

17  _____

                        **INTRODUCTION**
18
          Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor
19
    of sports and entertainment programming.  By contract, Plaintiff purchased the domestic commercial
20
    exhibition rights to broadcast the *Marco Antonio Barrera III v. Mzonke Fana World Super*
21
    *Featherweight Championship Fight Program* of April 9, 2005.  This *Program* included the main
22
    event (between Marco Antonio Barrera III and Mzonke Fana) along with an undercard (preliminary)
23
    bouts, televised replay, and color commentary, hereinafter collectively referred to as the "*Program*".
24
          Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout
25
    United States and its territories, wherein it granted limited public exhibition rights to these entities
26
    (sublicensees) for the benefit and entertainment of the patrons within their respective establishments
27
    (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.).
28

The interstate transmission of the Plaintiff's *Program* was encrypted and made available only to Plaintiff's customers (commercial locations which paid Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the *Program*).

On April 9, 2005 an investigator observed the unlawful exhibition of Plaintiff's *Program* at the Defendant's commercial establishment. The investigator's observations were later documented in a sworn affidavit now before this Honorable Court. (See Declaration of Affiant.)

On , Plaintiff filed suit against Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a EL COYOTE MEXICAN GRILL (hereinafter "Defendant") after Plaintiff's efforts to resolve this matter informally failed. The thrust of Plaintiff's Complaint alleged that the Defendant, and or his employees and or agents unlawfully intercepted and intentionally exhibited the *Program* at the Defendant's establishment for the purpose of direct or indirect commercial advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as amended, as well as Title 47 U.S.C. § 553. Plaintiff's complaint also includes a pendant common-law claim of Conversion.

Neither the Defendant nor anyone acting on the Defendant's behalf filed an Answer or any other responsive pleading to Plaintiff's duly served complaint. Accordingly, on June 5, 2008, following Plaintiff's Request, the Court entered default against the Defendant in this action.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court now enter judgment against the Defendant as prayed forth below.

## DISCUSSION

**PLAINTIFF IS ENTITLED TO ENHANCED STATUTORY DAMAGES IN THIS ACTION**

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits**."** ***Wright, Miller & Kane, Federal Practice and Procedures***, §2684, p. 4-19-20. The Defendant's default serves as an admission of Plaintiff's well-pled allegations of fact. ***Danning v. Lavine***, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorneys' fees, and costs to which Plaintiff is entitled from the Defendant for the unauthorized exhibition of Plaintiff's *Program*.

Title 47 U.S.C. Section 605 protects companies such as the Plaintiff against the theft of its proprietary communications such as the instant *Program*.  See, ***International Cablevision, Inc. v. Sykes***, 75 F.3d.123 (2d Circ. 1996), ***Cimenelli v. Cablevision***, 583 F. Supp. 158, 161 (E.D.N.Y. 1984); ***Cablevision Systems v. Seimon***, 767 F.2d 1364 (1985); ***Quincy Cablesystems, Inc. v. Sully's Bar, Inc.***, 640 F. Supp. 1159 (D.Mass. 1986); ***National Subscription Television v. S & HTV***, 644 F.2d 820 (9th Cir. 1981); ***National Football League v. Alley, Inc.***, 624 F. Supp. 6 (S.D. Fla. 1983). The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Title 47 U.S.C. § 553 was designed to provide a remedial scheme for unauthorized reception of cable communication.  ***Home Box Office v. Gee-Cee, Inc.***, 838 F.Supp. 436 (E.D. Mo. 1993). Certain courts have also held a private party plaintiff may recover civil damages pursuant to this statute where end-users violators unlawfully obtained a proprietary broadcast via satellite.

As a starting point, a party aggrieved under the Statutes may, at their discretion, recover either actual or statutory damages.  **§§ 553(c)(3)(A) and 605(e)(3)(C).** Statutory damages may be awarded up to $10,000.00 for each violation.  **§§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).**  Additionally, if the Court determines the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," **the Court may award enhanced damages of up to $100,000.00 for each violation under §605(e)(3)(C)(ii) and $50,000.00 under §553(c)(3)(B)(III).** Because Plaintiff constitutes an aggrieved party under these telecommunications statutes (hereinafter " Statutes") (see §§553 (C)(1) and 605(D)(6)), Plaintiff is entitled to damages from the Defendant.

EL COYOTE MEXICAN GRILL is a commercial establishment, and could only lawfully obtain the *Program* if Plaintiff had contracted with Defendant for the rights to show the *Program*. However, this lawful approach was not taken.  Therefore, Defendant must have undertaken specific wrongful actions to intercept an/or receive and broadcast the encrypted telecast.  (See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court concurrently filed with this Memorandum (hereinafter "Plaintiff's Affidavit")).  Since the Defendant must have committed wrongful acts in order to intercept, receive, and broadcast the *Program*, Plaintiff seeks substantial statutory damages from the court in this action.

Statutory damages are appropriate where actual damages are difficult to prove.  ***Lauretex Textile Corp. v. Allton Knitting Mills, Inc***., 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of

adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). In the instant case, as more fully discussed infra, it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions. Accordingly, it is appropriate for Plaintiff to elect to receive statutory damages in the instant action.

In order to deter the unlawful use of communications such as the *Program*, Congress specifically designed the Statues to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." ***Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7***, 5577, 5658; See also ***U.S. v. Scott***, 783 F. Supp. 280, 281 (N.D. Miss. 1992). To reach these ends, the Statues include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications. See ***Scott***, 783 F. Supp. At 281; See generally §§ 553(b) and 605(e). Moreover Congress has equated a violation of the Statutes to theft of service. See **1988 U.S. Code Cong. & Admin. News 7**, 5577, 4642-43. In 1988, in an effort to further deter theft, Congress amended the Statues to provide for more severe penalties for violations. ***Id.*** at 5657.

As set forth within Plaintiff's Affidavit, the Defendant's interception, receipt, and broadcast of the encrypted *Program* was not inadvertent. Both §§ 553(c)(3)(C) and 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section . . . .", as stated by Congress, this type of situation occurs rarely:

> [i]t is not intended that this provision serve in any way as a defense to determination of liability under subsection (a), but rather only as provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

*Cable Communications Policy Act*, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751.

///

///

Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe impact of theft of various wire communications, including closed-circuit programming, such as the *Program*.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. CV 08-1872 RMW**
**PAGE 4**

As stated in the House Bill:

> "The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire into building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices does not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instances, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.

> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it".

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720. Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices. See *U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

Therefore, in light of the above observations, as it first basis for relief, Plaintiff requests statutory damages pursuant to §§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II). See *Cable/Home Communication Corp. v. Network Production, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990). Where both statutes have been violated, some Ninth Circuit courts have chosen to award damages pursuant only to § 605(e)(3)(C)(i)(II). *See Kingvision Pay-Per-View, Ltd. v. Ortega*, 2002 U.S. Dist. LEXIS 24305, *6 (N.D. Cal. 2002). However, it is not unheard of for courts in this circuit to award damages pursuant to both statutes. See, *Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.*, 1996 U.S. Dist. LEXIS 8686 (N.D. Cal. 1996).

Under Title 47 U.S.C. Section 605(e)(3)(c)(II), the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and no more than $10,000.00.

To determine appropriate statutory awards, Ninth Circuit courts have considered many factors, and these factors often overlap with the factors for enhancing damages. See generally ***Universal Sports Network, Inc. v. Jimenez***, 2002 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002) (considering intent to realize personal gain, repeat offenses, and the extent of the rebroadcast); ***Kingvision Pay-Per-View, Ltd. v. Rivers***, 2000 U.S. Dist. LEXIS 4338 (N.D. Cal. 2000) (considering repeat offenses, and awarding the statutory minimum only where one defendant was already out of business). Some courts will award the minimum amount automatically if the defendant profited less than $1,000.00 from pirating the fight. See ***Entertainment by J&J, Inc. v. Montecinos***, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002). However, this reasoning should only be used if the Plaintiff seeks restitution damages or substitutional relief by invoking Section 605(e)(3)(C)(I) for actual damages. Other courts will award anywhere from $2,000.00 to $10,000.00 as a starting point. See ***Joe Hand Promotions, Inc. v. Dailey***, 2003 U.S. Dist. LEXIS 4091 (N.D. Cal. 2003); ***Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.***, 1996 U.S. Dist. LEXIS 8686 (N.D. Cal. 1996).

Yet it is respectfully submitted that *the most* important factor in assessing damages is the deterrent effect of that award. See generally ***Trademark & Satellite Acts***, **P.L.-**6678, 1988 *U.S. Cong. & Admin. News* 7, 5577, 5658. Many courts factor deterrence into their damage enhancement for Section 605(e)(3)(C)(ii), although it may be more appropriate for the statutory damage calculation pursuant to Section 605(e)(3)(C)(II). See ***Joe Hand Promotions, Inc. v. Pete***, 1999 U.S. Dist. LEXIS 12651 (N.D. Cal. 1999) (awarding $5,000.00 to deter future transgressions); ***Entertainment by J&J, Inc. v. Montecinos***, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002) (awarding $5,000.00 to deter future transgressions).

We would like to draw the Court's attention to one case where the enhanced statutory damages awarded, based solely on the deterrent effect, were more than three times what the transgressor would have paid to properly commercially license the event. See ***Entertainment By J&J, Inc. v. Al-Waha Enterprises, Inc.***, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002). As noted by the Court, requiring the Defendant "to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute." ***Id.***

Accordingly, it is respectfully submitted an award of the *enhanced* statutory damage *minimum* ($10,000.00) is a necessary baseline amount this Court should consider adopting to effectively deter parties such as the Defendant from stealing proprietary programming. Next, Plaintiff respectfully and additionally requests enhanced damages pursuant to Sections 553(c)(3)(B) and 605(e)(3)(C)(ii). Section 605(e)(3)(C)(ii) advises awarding up to $100,000.00 where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . ." In similar circumstances, Section 553(c)(3)(B) will award an aggrieved Plaintiff up to $50,000.00. "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an indifference for its requirements.'" ***Cablevision Sys. N.Y. City Corp. v. Lokshin***, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (quoting ***Trans World Airlines, Inc. v. Thurston***, 469 U.S. 111, 126 (1985)).

To determine intent for commercial or private gain, 9th Circuit courts often look for evidence of a cover charge, increased price of food/drinks, advertisements, or the number of patrons in attendance. See ***Entertainment By J&J, Inc. v. Perez***, 2000 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002); ***Kingvision Pay-Per-View, Ltd. v. Arias***, 2000 U.S. Dist. LEXIS 162 (N.D. Cal. 2000). However such requirements are largely illogical and inconsistent with the very nature of the infringing activity. Commercial signal pirates are looking to avoid, not attract, detection for their unlawful acts, and have no financial investment in the programming they are unlawfully exhibiting.

Mindful of this, Courts today are now looking at the act interception and not promotion of the event itself in calculating appropriate damages. For instance in ***Al-Waha***, the plaintiff *did not* provide evidence of a cover charge or advertisements of the subject fight. 219 F. Supp. 2d at 776. Nevertheless, the Court rightfully awarded enhanced damages to the aggrieved party plaintiff. ***Id***. at 777. "Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [the Defendant] . . . to be willful and for the purposes of direct or indirect commercial advantage or private financial gain." ***Id***. at 776 (citing ***Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc.*** No. 2, 172 F. Supp. 2d 810, 812 (S.D.W.Va. 2001); ***Time Warner Cable v. Googies Luncheonette, Inc.***, 77 F. Supp. 2d 485, 490; ***Time Warner Cable v. Taco Rapido Restaurant***, 988 F. Supp. 107, 111. Enhanced statutory damages should likewise be awarded in the instant action now before this Honorable Court.

### CONCLUSION

The unauthorized interception, receipt and broadcast of the *Program* and other closed-circuit programming threatens the economic viability of the promotions industry. There are no countervailing social or policy considerations that justify the unauthorized interception of these broadcasts. See *ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); *Subscription Television of Greater Washington v. Kaufman*, 606 F. Supp. 1540, 1544 (D.D.C. 1985).

As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose its legitimate commercial customers which are unwilling and financially unable to compete with those unauthorized locations, such as EL COYOTE MEXICAN GRILL, which exhibit sports and other closed-circuit programming in an unlicensed manner. Because these unauthorized commercial establishments offer programming to their patrons for no fee (or for a fee which is less than the authorized establishments charge), the legitimate commercial establishments cannot attract paying customers to offset their sizeable investments in commercial licensing and event promotion, and as a result, and incur substantial financial loss. Therefore eliminating the prospect that they will continue purchasing commercial exhibition licenses from the Plaintiff in the future.

Theft of closed-circuit broadcasts, such as the *Program*, by unauthorized commercial establishments, such as EL COYOTE MEXICAN GRILL, adversely impacts both Plaintiff and its lawful customers. Plaintiff pays substantial fees to the promoters of the events to obtain the exhibition rights to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's *exclusive* source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit boxing and entertainment programming such as the *Program*. The corrosive effect of commercial signal permanently destroys of Plaintiff's lawful customer base. See *Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 379, 381 (E.D. Ohio 1983).

Further, as a direct and proximate result of piracy, Plaintiff suffers severe damage to its goodwill and professional reputation, and has invariably lost its right and ability to control and receive fees for transmission of the *Program*. See *Quincy Cablesystems, Inc., 640 F.Supp.* at 1161. When negotiating sublicense fees, Plaintiff represents to commercial establishments that it exercises supervision over the commercial distribution of its programming. When an unauthorized commercial

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
DEFAULT JUDGMENT BY THE COURT
CASE NO. CV 08-1872 RMW
PAGE 8

1  establishment intercept, receive, and broadcast closed-circuit programming, such as the *Program*,

2  Plaintiff's reputation and goodwill suffers irreparable damage with its existing and prospective

3  commercial customers from what appears to be a misrepresentation of such capabilities on its own

4  part.  Ultimately, piracy simply devalues the product being lawfully developed, marketed, licensed,

5  or sold to the detriment and injury of all.

6          Clearly, Plaintiff should receive just and substantial compensation from the Defendant for

7  these losses suffered.  Modest awards of statutory damages cannot meet that test.  Damages

8  calculated focused on the ill-gotten gains derived by the pirate as opposed to the injury inflicted will

   never meet that test.

9          Rather, the sustenance of Plaintiff's small family business concern depends upon the

10  willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming,

11  and the Courts' willingness to deal fairly but ever most firmly with the rising tide of theft of

12  Plaintiff's intellectual property.

13          While it maybe unconventional to award the Plaintiff the quantum of damages it now prays

14  for from a defendant in a default setting, piracy is nothing less than outright theft and a firm judicial

15  hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

16

17

18                                          Respectfully submitted,

19

20

21  Dated:  July 1, 2008                    */s/ Thomas P. Riley*
                                           **LAW OFFICES OF THOMAS P. RILEY, P.C.**
22                                          By: Thomas P. Riley
23                                          Attorneys for Plaintiff
                                           J & J Sports Productions, Inc.
24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. CV 08-1872 RMW**
**PAGE 9**

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 1, 2008, I served:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano (Defendant)
2766 Plumas Drive, #229
San Jose, CA 95121

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2008, at South Pasadena, California.

Dated:  July 1, 2008                              */s/ Terry Houston*
                                                 **TERRY HOUSTON**

Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Avenue
South Pasadena, CA 91030-3227

Tel: 626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J Sports Productions, Inc., | Case No. CV 08-1872 RMW-PVT |
| Plaintiff, | DECLARATION OF THOMAS P. RILEY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT AGAINST DEFENDANT FELIPE CRUZ MANZANO A/K/A FELIPE G. CRUZ MANZANO, INDIVIDUALLY and d/b/a EL COYOTE MEXICAN GRILL |
| vs. | |
| Felipe Cruz Manzano, et al. | |
| Defendant. | |

To: The Clerk of the above-entitled Court:

I, Thomas P. Riley, declare as follows:

1.      My firm and I are counsel to J & J Sports Productions, Inc., in the above-entitled action.

2.      The Defendant had not appeared in this action and has not responded to the Complaint served upon him within the time permitted by law.

3.      Defendant is not infant, incompetent person, or a person in military service or otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.

///

///

DECLARATION OF THOMAS P. RILEY IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT
BY THE COURT
CV 08-1872 RMW
PAGE 1

4.    On May 30, 2008, a Request for Entry of Default was filed with the Court regarding Defendant Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote Mexican Grill, the instant Defendant.

5.    Default was entered on June 5, 2008, against Defendant Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote Mexican Grill.

6.    This action involves a claim for damages by Plaintiff J & J Sports Productions, Inc., against Defendant Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote Mexican Grill for misappropriation of a Championship Boxing Program in violation of 47 U.S.C. Section 605, *et seq*., and 47 U.S.C. Section 553, *et seq*.  Plaintiff further alleges that the Defendant committed tort of Conversion.  Plaintiff seeks relief on its causes of action as set forth below.

7.    Plaintiff respectfully requests judgment in its favor and that damages be awarded to it, as follows:

    a.  Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii):       $    50,000.00

    b.  Violation Title 47 U.S.C. 553 (b)(2) and (c)(2)(c):       $    50,000.00

    c.  Tort of Conversion:       $      800.00

            Total Amount of Requested Judgment:       $    100,800.00

I declare under the penalty of perjury of the laws of the State of California and the United States of America that the above is true and correct.

                    Respectfully submitted,


Dated:  July 1, 2008        */s/ Thomas P. Riley*
                    **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                    BY: Thomas P. Riley
                    Attorneys for Plaintiff
                    J & J Sports Productions, Inc.

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT**
**CV 08-1872 RMW**
**PAGE 2**

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 1, 2008, I served:

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano (Defendant)
2766 Plumas Drive, #229
San Jose, CA 95121

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2008, at South Pasadena, California.

Dated: July 1, 2008                    _/s/ Terry Houston_____
                                       **TERRY HOUSTON**

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT
BY THE COURT
CV 08-1872 RMW
PAGE 3**

1 | Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
2 | First Library Square
1114 Fremont Avenue
3 | South Pasadena, CA 91030-3227

4 | Tel: 626-799-9797
Fax: 626-799-9795
5 | TPRLAW@att.net

6 | Attorneys for Plaintiff
J & J Sports Productions, Inc.

7

UNITED STATES DISTRICT COURT

8 | NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10 J & J Sports Productions, Inc., | CASE NO. CV 08-1872 RMW-PVT |
| 11     Plaintiff, | DECLARATION OF AFFIANT |
| 12 | |
|     vs. | |
| 13 | |
| 14 Felipe Cruz Manzano, et al. | |
| 15     Defendant. | |

16

17     **TO THE CLERK OF THE COURT**:

18

19     A true and correct copy of the Declaration of Affiant is attached hereto and made part hereof.

20

21

22                Respectfully submitted:

23

24

Date: July 1, 2008               /s/ Thomas P. Riley
25                     **LAW OFFICES OF THOMAS P. RILEY, P.C.**
26                     By: Thomas P. Riley
                    Attorneys for Plaintiff
27                     J & J Sports Productions, Inc.

28

DECLARATION OF AFFIANT
CASE NO. CV 08-1872 RMW-PVT
PAGE 1

STATE OF __CALIFORNIA__

COUNTY OF __SANTA CLARA__

## AFFIDAVIT

I, the undersigned, being duly sworn according to law deposes and says, that on __APRIL 9__, 200__5__ at

__6:15__ (p.m)/a.m, I entered the __EL COYOTE MEXICAN GRILL__
(time)                                  (trade name of establishment)

located at __4278 SENTER RD. SAN JOSE, CA 95111   (408)224-4755__
(street address, city, state, zip code)

I paid a cover charge of $ __∅__ to enter this establishment. I ordered __2__ Drink(s) from the

Bartender/ Barmaid/ Waitress who was described as __FEMALE LATE 20'S 5'2",__

__HISPANIC__
(name, sex, age, ethnicity, distinguishing characteristics)

I observed __3__ televisions located inside this establishment. The televisions can be
(total # of TVs)

described as follows: __3 18" MAGNOVOX__ located __BY ENTRANCE__
(make, model, and size of each TV)

__DOOR, ONE AT THE CORNER OF BAR, ONE IN THE LEFT CORNER OF__
(specific location of each TV)                                __RESTUARANT__

At the time I was inside the above establishment, I observed the following program on the above televisions: ____

__GARCIA BLUE TRUNKS W/ WHITE STRIPES   FIGHTING__

__GARCIA BLACK TRUNKS   2nd ROUND__

(names of fighters or commentators, trunk colors of each fighter/attire of commentators, time remaining in round)

I also observed the following distinguishing items inside the establishment: __A FEW__

__SKELETON COW HEADS ON THE WALL BY THE (2) POOL TABLES,__

__OCEAN MURALS ON THE WALLS, CORONA BANNERS HANGING__

__FROM CEILING, & A BIG DOLPHIN FISH ON THE RESTUARANT__

__SIDE WALL__
(posters, decorations, pool tables, memorabilia, etc.)

This establishment rates __POOR__
(Good, Fair, Poor)

Page 1 of 2

The capacity of this establishment is approximately ____40____ people. At the time of my appearance I

counted the number of patrons three (3) separate times.  The head counts were ____10____,

____9____, ____12____.

I left the above establishment at ____0:44____ p.m/a.m on ____04.09.05____.
                                        (time)                              (date)

I also observed the following license plates in the parking lot

1) ____3Z00011____  2) ____3t7NEISO____  3) ____3WD3666____

4) ____4XPC771____  5) ____5L83941____  6) ____6B04208____

Date: _____

_____
Signature of Investigator

DAVID PIRES
Name of Investigator  (Printed)

DAVID PIRES
Investigative Agency

408. 210. 4007
Telephone Number of Agency

## NOTARY

On ____April 11, 2005____, before me, ____Lory Saltiban____ Notary Public,

personally appeared ____David Pires____ [          ] personally known to me --- or --- ☒ proved to me

on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me

that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person or the entity

upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

____Lory Saltiban, Notary Public____

Signature of Notary

LORY SALTIBAN
Commission # 1455429
Notary Public - California
Alameda County
My Comm. Expires Dec 9, 2007



## CHECKLIST FOR DISCOVERED PIRATE
## Federal Anti-Piracy Assignment

1.   My Name and Date of Birth: DAVID PIRES    03.04.80

2.   My Company Name (if any): DAVID PIRES

3.   Pirate's Name & Address (Commercial Establishment):

EL COYOTE MEXICAN GRILL

4278 SENTER RD.  SAN JOSE, CA 95111

**NOTE: IT IS IMPORTANT TO NOTE THE COMPLETE NAME AND ADDRESS, INCLUDING <u>STREET NUMBER</u>, CITY, STATE AND ZIP CODE. PLEASE INCLUDE NORTH, SOUTH, EAST, WEST, AVENUE, STREET, BOULEVARD, ETC. WHEN FILLING OUT THE STREET ADDRESS.**

4.   Did the establishment advertise or promote the telecast in any way? If so, please describe any banners, flyers, posters or any other promotion you observed.

NO ADVERTISMENT

5.   Was there an admission or cover charge? $\phi$

If so, how much? $\phi$

6.   During my visit to the establishment, I observed the boxing match featuring

GARCIA                (First Boxer) vs.    GARCIA        (Second Boxer).

The first boxer's trunks are colored:. BLUE

The second boxer's trunks are colored: BLACK

The portion of the broadcast of the fight appeared to be in the    2    round.

I also observed that the ring mat displayed the NEMIROFF    logo and

that the corner posts displayed the NEMIROFF/GOLDEN BOY logo.

7.   During my visit to the establishment, I observed the announcers discussing the

fight card. The announcers were wearing NO ANNOUNCERS SHOWN .

I noticed that the   NONE SHOWN    logo appeared on their microphones.

Specifically, the announcers were talking about ANNOUNCERS WERE

TALKING IN THE BACKGROUND ABOUT THE FIGHT .

8.   I observed a total of        3        television sets.

Copyright © 2001

**CHECKLIST: Page 2**



9.    Of the ____3____ television sets that I observed, ____3____ were displaying the telecast. ____∅____ number of the TV's I observed were big screens.

10.   Provide a detailed description of at least one employee (name, gender, physical description and if possible, that employee's position with the establishment):

COOK: 210ILS, MID 40'S, BLACK T-SHIRT, DARK BLUE BASEBALL CAP, DARK HAIR, 5'6" BLUE JEANS & MUSTACHE

11.   Establishment description (interior/exterior, unique features, pool table, lighting, decorations, etc.)

A FEW SKELETON COW HEADS ON THE WALL BY THE (2) POOL TABLES, OCEAN MURALS ON THE WALLS, CORONA BANNERS HANGING FROM CEILING, & A BIG DOLPHIN FISH ON THE RESTUARANT SIDEWALL

Copyright © 2001





EL COYOTE MEXICAN GRILL
4278 SENTER RD. SAN JOSE  CA 95111

EL COYOTE MEXICAN GRILL
4278 SENTER RD. SAN JOSE  CA 95111



# California Department of Alcoholic Beverage Control
## *License Query System Summary*
## *as of 4/10/2005*

| License Information | |
|---|---|
| **License Number:** 419554 | **Status:** ACTIVE |
| **Primary Owner:** CRUZMANZANO FELIPE G | |
| **ABC Office of Application:** SAN JOSE | |
| **Business Name** | |
| **Doing Business As:** EL COYOTE RESTAURANT | |
| **Business Address** | |
| **Address:** 4278 SENTER RD　　**Census Tract:** 5032.08 | |
| **City:** SAN JOSE　　**County:** SANTA CLARA | |
| **State:** CA　　**Zip Code:** 95111 | |
| **Licensee Information** | |
| **Licensee:** CRUZMANZANO FELIPE G | |
| **License Types** | |
| 1) **License Type:** 41 - ON-SALE BEER AND WINE - EATING PLACE | |
| **License Type Status:** ACTIVE | |
| **Status Date:** 17-DEC-2004　　**Term:** Month(s) | |
| **Original Issue Date:** 17-DEC-2004　　**Expiration Date:** 30-NOV-2005 | |
| **Master:** Y　　**Duplicate:** 0　　**Fee Code:** NA | |
| **Condition:** OPERATING RESTRICTIONS | |
| **License Type was Transferred On:**　　**From:** 342735 | |
| 2) **License Type:** 30 - TEMPORARY PERMIT | |
| **License Type Status:** ISSUE | |
| **Status Date:** 23-NOV-2004　　**Term:** Month(s) | |
| **Original Issue Date:**　　**Expiration Date:** | |
| **Master:** Y　　**Duplicate:** 1　　**Fee Code:** NA | |
| **Current Disciplinary Action** | |
| . . No Active Disciplinary Action found . . . | |
| **Disciplinary History** | |
| . . No Disciplinary History found . . . | |
| **Hold Information** | |
| . . No Active Holds found . . . | |

*- - - End of Report - - -*

For a definition of codes, view our glossary.

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 1, 2008, I served:

### DECLARATION OF AFFIANT

On all parties referenced by enclosing true copies thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano (Defendant)
2766 Plumas Drive, #229
San Jose, CA 95121

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2008, at South Pasadena, California.

Dated: July 1, 2008

/s/ Terry Houston
**TERRY HOUSTON**

DECLARATION OF AFFIANT
CASE NO.  CV 08-1872 RMW-PVT
PAGE 2

**Thomas P. Riley, SBN 194706**
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
**First Library Square**
**1114 Fremont Avenue**
**South Pasadena, CA 91030-3227**

**Tel: 626-799-9797**
**Fax: 626-799-9795**
**TPRLAW@att.net**

**Attorneys for Plaintiff**
**J & J Sports Productions, Inc.**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **J & J Sports Productions, Inc.,** | **Case No. CV 08-1872 RMW-PVT** |
| **Plaintiff,** | **ORDER (Proposed)** |
| **vs.** | |
| **Felipe Cruz Manzano, et al.,** | |
| **Defendant.** | |

Default having been entered in this action on June 5, 2008 against Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote Mexican Grill, and the application for and declarations in support of default judgment having been filed on or about July 1, 2008, and having been served on the Defendant and notice given and no appearance by the Defendant having been made in person or in writing and all other requirements for entry of default judgment pursuant to Federal Rule Civil Procedure 55 having been certified to by Plaintiff's counsel, now therefore,

///
///
///
///
///
///

**ORDER (Proposed)**
**CASE NO. CV 08-1872 RMW**
**PAGE 1**

**IT IS HEREBY ORDERED AND ADJUDGED that JUDGMENT** be entered against Defendant Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano, individually and d/b/a El Coyote Mexican Grill and in favor of J & J Sports Productions, Inc., as follows:

|   |   |   |
|---|---|---|
| a. For the Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii): | $ | 50,000.00 |
| b. For the Violation of Title 47 U.S.C. 553 (b)(2) and (c)(2)(c): | $ | 50,000.00 |
| c. For the Tort of Conversion: | $ | 800.00 |
| Total: | $ | 100,800.00 |

**Accordingly, JUDGMENT IS ENTERED IN ACCORDANCE WITH THE FOREGOING IN THE SUM OF $100,800.00.**

**ITS SO ORDERED**:

_____        Dated:_____
**The Honorable Ronald M. Whyte**
**United States District Court**
**Northern District of California**

///
///
///
///
///
///
///

**ORDER (Proposed)**
**CASE NO. CV 08-1872 RMW**
**PAGE 2**

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On July 1, 2008, I served:

**ORDER (PROPOSED)**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Felipe Cruz Manzano a/k/a Felipe G. Cruz Manzano
2766 Plumas Drive, #229
San Jose, CA 95121

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2008, at South Pasadena, California.

Dated:  July 1, 2008                               /s/ Terry Houston
                                                   **TERRY HOUSTON**

**ORDER (Proposed)**
**CASE NO. CV 08-1872 RMW**
**PAGE 3**