E-Filed on: 9/29/2008

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FELIPE CRUZ MANZANO aka FELIPE G. CRUZ MANZANO, individually and d/b/a El Coyote Mexican Grill, <br><br> Defendants. | No. C-08-01872 RMW <br><br> ORDER GRANTING MOTION FOR DEFAULT JUDGMENT <br><br> **[Re Docket No. 7]** |

Plaintiff J & J Sports Productions, Inc. moves for default judgment against the defendant, Felipe Cruz Manzano. The court has considered the papers submitted in support of the motion, the arguments of counsel and the testimony of Mr. Manzano. For the reasons set forth below, the court grants J & J's motion for default judgment.

## I. BACKGROUND

### A. J & J Sports Productions

J & J Sports Productions, Inc. licenses the right to broadcast pay-per-view sports entertainment in commercial establishments. Compl. ¶¶ 6, 9, 10. The fight relevant to this case is the "Marco Anotonio Barrera III v. Mzonke Fana World Super Featherweight Championship Fight

1  Program." Compl. ¶ 9.[1]  J & J's president, Joseph M. Gagliardi, has observed that his sales have
2  eroded, due in large part to signal piracy. Docket No. 8, Gagliardi Decl. ¶¶ 4, 8.  Mr. Gagliardi
3  believes that signal piracy costs his company millions of dollars per year. *Id.*  Accordingly, J & J
4  incurs a "considerable expense" to discover, identify and prosecute signal pirates. *Id.* ¶ 6.

### B. Mr. Manzano and the El Coyote Mexican Grill

J & J filed its complaint against Mr. Manzano on April 8, 2008. As alleged, Mr. Manzano is "is an owner, and/or operator, and/or licensee, and/or permitee, and/or person in charge, and/or individual with dominion, control, oversight and management of the commercial establishment doing business as El Coyote Mexican Grill operating at 4278 Senter Road, San Jose, California 95111." Compl. ¶ 7.  Public records tell a somewhat different story. The California Department of Alcoholic Beverage Control maintains public records regarding its licenses to serve alcohol. *See* California ABC - License Query System, http://www.abc.ca.gov/datport/LQSMenu.html; *see also* Fed. R. Evid. 201(b)-(c). El Coyote Mexican Grill was operated by Lupe and Armando Vavquez, but their alcohol license was transferred on October 18, 2004. *See* License No. 342735.  From October 18, 2004 to September 26, 2006, the establishment at 4278 Senter Road was known as El Coyote Restaurant and was operated by Felipe G. Cruzmanzano. *See* License No. 419554. Since September 26, 2006, the establishment at 4278 Senter Road is no longer known as El Coyote, but as the Catracho Restaurant. *See* License No. 446104. It is currently operated by Miriam Sagrario Velasquez and Canales Humberto R. Lainez. *Id.* That aside, the record is clear that Mr. Manzano did operate the El Coyote Mexican Grill at the time in question.

The fight aired on April 9, 2005. Compl. ¶ 9. Mr. Manzano did not have a license to show the fight, but nonetheless watched it at El Coyote. *Id.* ¶ 12.  Details about that night come from the declaration of David Pires. *See* Docket No. 7-3. Mr. Pires entered El Coyote at 6:15 p.m. on April 9, 2005. *Id.* He ordered two drinks, and observed "Garcia blue trunks w/ white stripes fighting

---

[1] J & J alleged that it owns the "exclusive nationwide television distribution rights" to the fight. Compl. ¶ 9. Mr. Gagliardi's declaration clarifies that J & J owns the "commercial exhibition licensing rights" to the fight. *Id.* ¶ 3. It appears that HBO owns the rights to provide the fight to residential customers.

United States District Court
For the Northern District of California

1  Garcia black trunks 2nd round" on the three televisions in the restaurant.[2]  *Id.*  While in El Coyote,
2  Mr. Pires observed that it could hold 40 people, but that he counted about 10 people in the
3  restaurant.  Docket No. 7-3.  He left at 6:44, and swore out the declaration two days later.  *Id.*  Mr.
4  Pires' declaration contains no information regarding whether or not he observed a satellite dish or a
5  cable box.
6       At the hearing on the motion for default judgment, Mr. Manzano testified through an
7  interpreter that he brought his cable box from home to the restaurant so he could watch the fight at
8  work with his family.  Mr. Manzano admits that he did not obtain a license to air the fight in his
9  restaurant.  His testimony clashes in some small details with the investigator's declaration regarding
10 the number of people in the restaurant, but they agree that there was no cover charge to enter the
11 restaurant and that few patrons were present.

## II.  ANALYSIS

13      J & J filed a form brief in support of its application for default judgment, requesting $50,000
14 in statutory damages for violating 47 U.S.C. § 553(b)(2) and(c)(2)(c) and $50,000 in statutory
15 damages for violating 47 U.S.C. § 605(e)(3)(B)(iii) and (c)(ii).  J & J also requests $800 for Mr.
16 Manzano's conversion of its programming.

### A.   Counts I and II – Violation of 47 U.S.C. § 553 and 47 U.S.C. § 605

18      Because section 553 is the more specific provision at issue, the court begins its analysis with
19 the second count of J & J's complaints.  Section 553(a)(1) prohibits a person from "intercept[ing] or
20 receiv[ing] or assit[ing] in intercepting or receiving any communications service offered over a cable
21 system."  In other words, section (a)(1) prohibits both illegally receiving cable programming and
22 helping others to illegally receive cable programming by manufacturing or distributing equipment
23 that allows a person to receive cable programming without authorization.  *See* 47 U.S.C. § 553(a)(2).
24 For any violation of section 553(a)(1), be it unauthorized interception or manufacturing or
25 distributing equipment to assist in intercepting cable programming, the maximum statutory damage
26 award for a willful violation "for purpose of commercial advantage or private financial gain" is

---

[2]   The bout between Aaron Garcia and Brian Garcia was included on the undercard of the Barrera-Fana fight.  Gagliardi Decl. ¶ 7.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-01872 RMW
TSF                                                        3

$50,000. 47 U.S.C. § 553(b)(2). As a preliminary matter, the court rejects J & J's argument that the airing of the fight qualifies for the statutory maximum of damages. Nothing about Mr. Manzano's conduct is nearly as egregious as the manufacture and distribution of equipment for intercepting cable programming, which might qualify for the maximum statutory damage award.

J & J also seeks to recover pursuant to section 605, which prohibits interception of "radio" communications. 47 U.S.C. § 605(a).[3] Pursuant to the law, J & J may recover a statutory damages award of "not less than $1,000 or more than $10,000," and the award may be increased by up to $100,000 if the violation was for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(i)(II)-(ii). Despite the broad phrasing of section 605 (which dates back to 1934), it is not coextensive with section 553. *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996). As explained in a thorough opinion by the Seventh Circuit, "cable television programming transmitted over a cable network is not a 'radio communication'" under section 605. *Id.* at 469; *see also TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196 (3d Cir. 2001) (endorsing *Norris* and further explaining the distinction between sections 553 and 605). A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception.

As mentioned, J & J seeks the maximum statutory damages for violation of both sections 553 and 605. J & J's cites various unpublished cases to support its entitlement to damages under both. The cases are not persuasive. The only one cited by J & J awarding damages (as opposed to finding violations) under both statutes did not consider the interplay between the two statutes and did not make a finding regarding how the piracy was accomplished, noting only that the defendant "professed not to know." *Spencer Promotions, Inc. v. 5th Quarter Enterprises Inc*, 1996 WL 438789, *3 (N.D. Cal. Feb. 21, 1996).

Unlike the inference that could be drawn from the calculated forgetfulness of the defendant in *Spencer Promotions*, the court is unpersuaded that Mr. Manzano also violated section 605. His

---

[3] Section 605(a) has four clauses. Clauses two, three and four prohibit only conduct related to "radio communications." The first clause prohibits activity with respect to both "radio" and "wire" communications. However, it only "prohibits the divulging of wire or radio transmissions by communications personnel." *United States v. Norris*, 88 F.3d 462, 465 (7th Cir. 1996).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT
C-08-01872 RMW
TSF                                                          4

1  testimony is clear that he used his cable box from home to watch the fight, and the investigator's
2  declaration gives no indication that a satellite dish was used.  Accordingly, the court declines to
3  enter any damages award pursuant to section 605.[4]

### B. Count III – Conversion

J & J's papers make no explanation for why it is entitled to damages for conversion of its programming on top of the violation of federal law.  J & J does not explain the basis for requesting $800.  Perhaps J & J is entitled to the amount of the pay-per-view fee for the programming that Mr. Manzano broadcast, but that amount is not included in the papers.  The court therefore declines to award any damages on the conversion claim because J & J has produced no evidence to support its requested damages.

### C. The Amount of Damages for the Section 553 Violation

J & J submits that "*the most* important factor in assessing damages is the deterrent effect of the award."  The court agrees.  And accordingly, the court begins its analysis with the minimum statutory damage award of $250.  *See* 47 U.S.C. § 553(c)(3)(A)(ii).  J & J's form allegations to the contrary, judicially noticeable public records indicate that Mr. Manzano no longer operates the facility where the piracy occurred.  Thus, a hefty statutory damages award will not deter future violations by Mr. Manzano.

Section 553(c)(3)(A)(ii) further instructs the court to award "a sum of not less than $250 or more than $10,000 as the court considers just."  Furthermore, "where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100."  47 U.S.C. § 553(c)(3)(C).  The evidence elicited at the hearing suggests that Mr. Manzano paid to watch the fight as a residential customer and did not grasp that he would violate federal law by then taking his cable box to work to watch the fight.  While Mr. Manzano's ignorance of the law does not excuse his acts, the statute expressly contemplates that ignorance of the law justifies minimizing any damages

---

[4] To be sure, the court must accept as true the complaint's allegations upon entry of default. But J & J's complaint does not allege *how* Mr. Manzano aired the program, only that he did so without authorization.  *See* Compl. ¶ 12.

award. J & J has not introduced any evidence to suggest greater culpability (for example, a large number of patrons, a cover charge, or a pattern of conduct) or to rebut Mr. Manzano's ignorance.

On the other hand, to reduce the award of statutory damages the court must find that the defendant "was not aware" *and* "had no reason to believe that his acts" would violate the law. J & J's business depends on commercial establishments respecting the law, and those establishments have a duty to conform their behavior to the law before being threatened with litigation. The court therefore declines to exercise its discretion to reduce the damages award to less than $250.

The court therefore finds that the award of $250 is just.

### III.  ORDER

For the foregoing reasons, the court grants J & J's motion for default judgment. Judgment shall be entered in favor of J & J in the amount of $250 in damages against Mr. Manzano.

DATED:     9/29/2008

RONALD M. WHYTE
United States District Judge

**Notice of this document has been sent to:**

**Counsel for Plaintiff:**

Thomas P. Riley          tprlaw@att.net

**Defendants:**

(no contact information)

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     9/29/2008                                          TSF
                                                    **Chambers of Judge Whyte**